**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

EDGAR PENA, BESSIE PENA,
LORRAINE PENA, EDWIN REYES,
DESIREE PENA, RONY REYES and
ALEXANDER PENA,

      Plaintiffs,

      v.                        Case No.: 3:09-cv-209-RV/EMT

FRED'S STORES OF TENNESSEE,
INC.,

      Defendant.
_____/

## ORDER

This civil rights action involves allegations of consumer discrimination under the Florida Civil Rights Act ("FCRA"), Chapter 760 of Florida Statutes, and Title 42, United States Code, Sections 1981 and 1982. The defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (doc. 20), and the plaintiffs oppose this motion.

**I.    BACKGROUND**

The relevant undisputed facts can be stated briefly. The defendant, Fred's Stores of Tennessee ("Fred's"), is a retail store chain that sells several different products, including food and beverage items pre-packaged by third party vendors. No food or drink products are made or prepared at the store, and the pre-packaged items are not specifically sold for consumption on the premises as there is no area inside or outside for eating or drinking. Fred's does not have a soda fountain for customer use, nor does it have a microwave or other device for customers to warm or cook food at the store.

On November 23, 2005, plaintiffs Edgar and Bessie Pena took their children

(plaintiffs Lorraine, Edwin, Desiree, Rony and Alexander) to the Fred's store located on East Nine Mile Road in Pensacola, Florida. The store is part of the Ensley Square Shopping Center, which contains other businesses including Firehouse Subs, Wings on the Go, and Pizza Hut restaurants. As the plaintiffs selected various items for purchase (the majority of which were Christmas decorations for their home), they did not experience discriminatory treatment. No one prevented, discouraged, or interfered with them from selecting any of the items available in the store, and no one made any comment or took action that the plaintiffs felt was discriminatory --- until Edgar encountered Fred's cashier Lara Nunes at the end of their shopping trip. The plaintiffs allege (and I must accept as true) that Nunes was not courteous and "not very happy" when they arrived at her register because the children "were making noise" and speaking in Spanish. When Edgar gave Nunes his credit card to finalize the transaction, she asked "are you sure you have money in it?" He said "yes" and asked why she would ask him that question, in response to which she "grabbed the credit card, scanned it, and threw it on the counter." When the transaction was complete, she "ripped the receipt out of the cash register and threw it on the counter." Edgar left the receipt on the counter and did not pick it up. He complained that it was deficient (because it "did not look complete" and "had a lot of blank spaces"), so he requested another one. Nunes then allegedly directed racial slurs at the plaintiffs, including "spick" and "wetback" and asked "why would you need a receipt if you're f**king illegal." After speaking with the manager on duty --- and refusing her offer to have Nunes apologize --- the family left the store with all the items they selected and paid for. This litigation followed.

The plaintiffs filed a three-count complaint in state court, alleging civil rights violations of the FCRA (count I) and Title 42, United States Code, Sections 1981 and 1982 (counts II and III). The defendant removed the case to federal court and now moves for summary judgment.


## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Summary judgment is inappropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). An issue of fact will be "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See id.*

## III. DISCUSSION

In their first cause of action, the plaintiffs allege discrimination in a place of public accommodation in violation of the FCRA. Section 760.08, Florida Statutes, states: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this chapter, without discrimination or segregation on the ground of race, color, national origin, sex, handicap, familial status, or religion." Section 760.02(11) defines "place of public accommodation" as, *inter alia*: "Any restaurant, cafeteria, lunchroom, lunch counter, soda fountain,

or other facility principally engaged in selling food for consumption the premises [or] Any establishment which is physically located within the premises of any establishment otherwise covered by this subsection, or within the premises of which is physically located any such covered establishment, and which holds itself out as serving patrons of such covered establishment." There is no published state or federal case that has addressed what constitutes a public accommodation under Section 760.02(11), but based on the statute's plain and unambiguous language, the place in question must be "principally engaged in selling food for consumption on the premises." Because it is clear that Fred's is not so engaged, the store is not a place of public accommodation.[1]

This conclusion is supported by looking to federal law as Section 760.02(11) tracks verbatim its federal counterpart in Title 42, United States Code, Section 2000a(b). In analyzing the federal statute, numerous courts have held that retail stores similar to Fred's are not considered places of public accommodation. *See, e.g., Brackens v. Big Lots, Inc.,* 2007 WL 208750, at *2-3 (W.D. Tex. Jan. 24, 2007) (collecting cases); *accord Carrington v. Lawson's Milk Co.,* 815 F.2d 702 (6th Cir. 1987) (store that sold lunch meat, cheese, and dairy products, *inter alia*, was not "'engaged in selling food for consumption on the premises,' but rather, [was] a place where food products were sold principally for off-premises consumption;" in other words, it was a place "'where food *service* was incidental to some other business'") (citation omitted; emphasis original); *Gigliotti v. Wawa Inc.,* 2000 WL 133755, at *1 (E.D. Pa. Feb. 2, 2000) (collecting cases and noting that a retail store "'was not principally engaged in selling food for consumption on

---

[1] The plaintiffs suggest that Fred's falls under the statute because the store accepts food stamps and because the food products division constituted 51% of the store's total sales in 2003. Regardless of its participation in the food stamp program and the percentage of food products that it sold six years ago, it is clear that those products were not specifically sold "*for consumption on the premises*."

*Case No.: 3:09-cv-209-RV/EMT*

premises where store sold food which was ready to eat but had no facilities for consumption of food on premises'").

The plaintiffs alternatively argue that Fred's is a public accommodation by virtue of it being part of the Ensley Square Shopping Center, which, as noted, is a shopping complex that also includes "covered establishments" such as Firehouse Subs, Wings on the Go, and Pizza Hut. This argument is unavailing for the reasons stated by the district court in *Halton v. Great Clips, Inc.,* 94 F. Supp. 2d 856 (N.D. Ohio 2000):

> The Plaintiffs contend the statute should be read broadly and that [the defendant hair salon] is an establishment within the premises of University Corners Shopping Plaza where establishments covered by 2000a(b)(2) are physically located. These covered establishments include restaurants[.]
>
> * * *
>
> Plaintiffs' assertion that the shopping plaza which rents to covered establishments brings it within the language --- "within the premises of which is physically located any such covered establishment" --- seems to be in error. This reading of the statute would bring every establishment in any mall or any shopping center within the statute's purview. . . .
>
> This Court reads the language of that portion of the statute to mean within the actual physical boundaries of a particular establishment is located a covered establishment, e.g. within the physical boundaries of the space rented by the hair salon itself is located a covered establishment. In other words, the premises does not include an entire shopping center or mall where the party has no control over who the other tenants may be and whether the other tenants will operate covered establishments. If the Court read the statute otherwise, a place of public accommodation would depend upon who the other tenants of a shopping center happened to be a

...

>     particular day. One day a business may be covered
>     because another tenant operates a covered establishment
>     and the next day, if a covered establishment vacates a
>     shopping center, other tenants would not fall within the
>     meaning of the statute. Congress could not have intended
>     such a confusing and inconsistent result which depends
>     upon such tenuous circumstances which are completely
>     out of the control of an accused establishment.

*Id.* at 861-63; *accord, e.g., Pinkney v. Meloy,* 241 F. Supp. 943, 946-47 (N.D. Fla. 1965) (noting that the "any establishment which is physically located within the premises of any establishment otherwise covered" statutory language was meant to apply to a non-covered business located "within the physical premises" of a covered establishment, such as a barber shop located inside a hotel).

Because there is no genuine issue of material fact as to whether Fred's is a "place of public accommodation," summary judgment is appropriate on the FCRA claim.

The plaintiffs' interference with contract claim under Section 1981 also fails. Section 1981 provides in relevant part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." However, as the Eleventh Circuit has held: "Section 1981 does not provide a general cause of action for all racial harassment that occurs during the contracting process. Rather, in the retail context, the plaintiff must demonstrate the loss of an actual contract interest, [and thus] there must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping." *Kinnon v. Arcoub, Gopman & Assocs., Inc.,* 490 F.3d 886, 892 (11th Cir. 2007) (citations and quotation marks omitted). In other words, to prevail on a Section 1981 claim, the customer must have actually been thwarted in exercising his contractual rights.

*Id.* "Virtually all federal courts that have analyzed Section 1981 claims in the retail merchandise context have required the plaintiff to show that he was actually prevented from making a purchase." *Rogers v. Elliott,* 135 F. Supp. 2d 1312, 1315 (N.D. Ga. 2001) (collecting cases); *accord Arguello v. Conoco, Inc.,* 330 F.3d 355, 358-59 (5th Cir. 2003) ("a § 1981 claim must allege that the plaintiff was *actually prevented* . . . from making a purchase or receiving service after attempting to do so") (citation omitted; emphasis original). Because it is undisputed that plaintiffs in this case were not thwarted or otherwise prevented from shopping and purchasing all the items they selected, their Section 1981 claim fails as a matter of law.

The plaintiffs' Section 1982 claim must meet a similar fate. Section 1982 prohibits discrimination in the sale of property, and it provides in relevant part: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to . . . purchase . . . real and personal property." The Supreme Court has noted that Sections 1981 and 1982 were the result of the same act of Congress and, in light of the "historical interrelationship between" the two statutes, they should generally be interpreted in the same manner to prevent racial discrimination. *See generally Runyon, McCrary,* 427 U.S. 160, 171-72, 96 S. Ct. 2586, 49 L. Ed. 2d 415 (1976). Accordingly, the Section 1982 claim fails for the same reason as the Section 1981 claim. *See, e.g., Brackens, supra,* 2007 WL 208750, at *2 (store cashier allegedly discriminated against the plaintiff during check-out; in dismissing the Section 1982 claim after having dismissed the Section 1981 claim, the court noted that plaintiff must show that defendant "deprived plaintiff of his rights because of race," which he "utterly fail[ed]" to do since the store accepted his money and sold him the goods).[2]

---

[2] The plaintiffs contend that the Sections 1981 and 1982 claims are viable because the "poor service and a disturbing atmosphere eventually drove Plaintiffs out of the store before completing their transaction." In making this specific claim,

## IV.    CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment (doc. 20) is GRANTED. The Clerk shall enter judgment in favor of the defendant, together with taxable costs, and close this case.

DONE and ORDERED this 31st day of December, 2009.

/s/ *Roger Vinson*
ROGER VINSON
Senior United States District Judge

---

the plaintiffs allege that "because [Edgar] was never provided a complete receipt, one cannot determine that he 'paid for' all items and that the transaction was complete." During his deposition, however, Edgar testified that he later verified his transaction at the Navy Federal Credit Union and he was, indeed, properly charged for all the items that he selected and left the store with. He further testified that although he believed the receipt was deficient and incomplete, he conceded that the document Nunes gave him was sufficient to confirm his purchase and would have enabled him to make any returns to the store, if necessary. Thus, there is no merit to the plaintiffs' claim that the sales transaction was "not completed."